APPLETON  BRAGG  *vs.*  BOSTON  AND  WORCESTER  RAILROAD CORPORATION.

SAME  *vs.*  SAME.

The admission of incompetent evidence to prove undisputed or immaterial facts furnishes no ground for a new trial.

Evidence of frequent sales by one person of the property of another, which were known and not objected to, is competent as tending to show that they were made by his permission; and his knowledge of such sales may, in the absence of direct evidence, be inferred from their frequency and amount, coupled with proof of ample means of knowledge.

One whose property has been sold from time to time by another person, without authority is not estopped from maintaining an action against the purchasers to recover its value, if he was not present at any of the sales, and did nothing to induce them to buy the property, and has not been guilty of any fraudulent act or contrivance, or meditated or promoted any express fraud; although he knew that they were making the purchases under the mistaken belief that the person who assumed to sell the property had authority to do so, and gave them no notice to the contrary.

Two actions brought to recover the value of a quantity of wood and railroad sleepers, cut upon land belonging to the plaintiff, and delivered by John W. Tobey to the defendants at their station in Westboro' from 1855 to 1860.   The declaration in one of the actions contained a count in contract and a count in tort; and that in the other contained simply a count in tort.

At the trial in the superior court, before *Rockwell*, J., it appeared that in 1855 the plaintiff purchased the land in question of Balch Dean, for $5000, giving his note therefor, secured by mortgage upon the land.   From 1855 to 1861 Tobey occupied the land under an oral contract to purchase the same of the plaintiff.   The terms of this contract were in dispute.   The

plaintiff testified that Tobey was to pay the annual interest on the note to Dean, and that when in addition to that he should pay to the plaintiff $1400, he was to have a bond for a deed upon the payment of the note to Dean ; and that, until the payment of the $1400, Tobey was not to cut or sell any wood or timber from the farm. Tobey testified that he was to have the farm by paying $5000 and interest thereon, and that he was authorized to cut and sell the wood and timber from the farm at his discretion, and apply the proceeds to the payment of the note.

At the time of his purchase of the farm, the plaintiff lived in Milford, about fifteen miles from it. In 1856 he lived in Brooklyn, New York. He introduced evidence tending to show that he was on the farm in 1856, and saw that wood and sleepers to the value of $300 had been cut off, and forbade Tobey from cutting or selling any more, and, though frequently in Milford, did not go upon the farm again till 1860, when he found that the wood and timber had all been cut and carried off. The defendants introduced evidence tending to show that he was upon the farm between 1856 and 1860 ; and, for the purpose of showing that he had means of knowing and did know that Tobey was selling the wood and timber, they were allowed to call several witnesses residing in Shrewsbury, who testified, under objection, that during that time they bought small quantities of wood, timber, vegetables and hides from Tobey, and had known of his selling such to others in Shrewsbury and vicinity.

James H. Gerould, a witness for the plaintiff, testified that he was the administrator of the estate of Dean, who died soon after the plaintiff's purchase of the farm, and that Tobey paid the annual interest on the $5000 note up to and including 1860, and that he gave to Tobey receipts therefor, signed by himself, which were allowed to be read to the jury, against the plaintiff's objection, and one of which was as follows :

" $300. Received of Mr. Appleton Bragg, by the hand of Mr. James W. Tobey, three hundred dollars, which I indorse on a note of five thousand dollars running to Balch Dean or order, and signed by said Appleton Bragg, being the interest due on said note for one year ending April 2d 1856."

The plaintiff requested the court to instruct the jury as fol-lows : " The fact that Tobey sold to other persons the articles above named from this farm cannot avail the present defend-ants, unless the jury are also further satisfied that both Bragg and the defendants had notice of such, and that Tobey was claiming to make such sales as owner of the property sold or as the authorized agent of the plaintiff, nor unless the jury believe further that Bragg, knowing of such sales, by his silence or omission to notify the defendants that Tobey had no right so to sell, acted in bad faith or collusively with Tobey. That if they believed that Bragg knew of the first sale of wood to the defendants, and that he then forbade Tobey selling any more, or if they believed that by the terms of the oral agreement be-tween Bragg and Tobey the latter had no right to sell the timber from said farm, then the defendants cannot defeat the plaintiff's claim for wood and sleepers subsequently sold to them by Tobey, even though Bragg gave the defendants no notice of Tobey's want of authority to sell, or of his having forbidden his selling any more."

The judge declined so to rule, and instructed the jury as fol-lows : " If the plaintiff has satisfied the jury upon the whole evidence that his verbal contract with Tobey was this, that Tobey was to go into possession of the Dean farm and cultivate ,t, and, for the use of it as a farm, should pay the interest on the $5000 note, and should cut off no wood except for his family's use ; and that Bragg, upon the payment by Tobey of $1400, was to give a bond for a deed, binding himself to give a deed when the balance of the $5000 note should be paid ;· and that said $1400 never was paid by Tobey ; then the wood and tim-ber on the farm belonged to Bragg, and Tobey had no right to cut it off and sell it, and the railroad company, although they bought it of him and paid him for it, cannot defend against this action, if there was no waiver of his rights by Bragg. But the defendants contend that **Bragg** by his conduct waived his rights, and cannot now sustain this action, because they say that for a series of years he suffered Tobey so to cut off the wood and sell it that Bragg is estopped from setting up his claim at this

time. It is true that the law is that if the owner of property, knowing that one who is not the owner is selling the property to a purchaser who supposes he has a right to sell it, sits by and sees it sold, and sees the purchaser pay for it, without disclosing his ownership, he cannot thereafter maintain his claim for its value. And if the jury are satisfied from the whole evidence that the plaintiff, during the time when Tobey was cutting off the wood and selling it, and receiving pay for it from the corporation, knew that he was doing so, and said nothing, making no claim upon the corporation and giving them no notice, he cannot now recover. There is evidence which the defendants insist tends to prove such knowledge on the part of the plaintiff, without any such claim or notice, and that evidence is for the consideration of the jury. The defendants' theory is, that by the verbal contract Tobey was to occupy the farm, and to have a bond upon paying $1400, and was authorized by Bragg to cut and sell off the wood and timber, to enable him to pay for the land. If the jury are satisfied upon the whole evidence that this theory is correct, then the plaintiff cannot maintain these actions."

The jury returned verdicts for the defendants, and the plaintiff alleged exceptions.

*P. C. Bacon & P. E. Aldrich*, for the plaintiff.

*G. S. Hale*, for the defendants. Tobey's open acts, in conformity to the contract to which he testified, were admissible as acts of ownership, and will be presumed to have been known to the plaintiff. 1 Greenl. Ev. §§ 38, 138, and cases cited. 1 Taylor on Ev. §§ 303, 304, & seq. The rulings on the question of estoppel were well authorized. 2 Smith's Lead. Cas. (5th Amer. ed.) 642. *Godeffroy v. Caldwell*, 2 California, 489.

HOAR, J. The admission of the receipts given by Gerould, however incompetent as evidence against the plaintiff, would furnish no reason for disturbing the verdict, because they did not prove and had no tendency to prove any fact in controversy, or anything which could possibly have occasioned any prejudice to the plaintiff's case. They were merely written recitals of facts precisely according with the plaintiff's own testimony. He testified that, by the contract between Tobey and himself, Tobey

was to pay the interest on his note, and that the payments were made and allowed to him in a suit on the note; which was all that the receipts imported.

The evidence of the sale of hides and vegetables from the farm by Tobey would certainly have been incompetent, if it stood alone, and were objected to; because it had nothing to do with the question at issue. Both parties admitted that Tobey was in the rightful occupation of the farm, with authority to use or dispose of its annual products; and the sale of such articles by him would have no bearing upon the question of his power to sell the wood and timber. But the objection seems to have been taken to the whole testimony offered of sales to other persons than the defendants of vegetables, hides and small quantities of wood and timber, without distinguishing between the articles; and there is nothing in the exceptions to show that they were not all sold together to each person. If the testimony as to the wood and timber were therefore competent, and admitted under proper instructions, we should not be satisfied that the plaintiff was entitled to an exception because the witnesses had also spoken of the hides and vegetables.

But we are of opinion that the instructions given to the jury were not strictly accurate, as applied to the state of facts set forth in the bill of exceptions; and that, taken in connection with the refusal to give the whole or any part of the instructions asked by the plaintiff, or to limit in any way the effect of the evidence of the sales of wood and timber to other persons, they were likely to mislead the jury. The exceptions are therefore sustained; and the reasons for this conclusion will be best presented by a brief analysis of the whole case.

Two things are perfectly clear at the outset: First, that the plaintiff was the owner of the farm, and with it of the wood and timber which were sold to the defendants, so that the defendants must show that the property had passed to them from him. And secondly, that they were bound to ascertain their vendor's title, and their liability would not be discharged merely because they had bought and paid for the property in good faith.

The defendants relied on a purchase from Tobey, the tenant on the plaintiff's farm, and payment to him. The first question, then, was of his authority to sell the wood and timber. Tobey testified that by his parol contract with the plaintiff he was to occupy the farm, with the right to purchase by paying $5000 and interest; and to have the right to cut and sell wood and timber from the farm at his discretion to pay the purchase money. There was evidence that the plaintiff knew of the first sales to the defendants, and forbade Tobey to sell any more. The court instructed the jury that if the contract were such as Tobey stated, the plaintiff could not maintain the action. The plaintiff asked for the instruction, that if the plaintiff forbade Tobey to sell any more, the defendants would have no defence to his claim for what was subsequently sold, although he gave no notice to the defendants that he had forbidden Tobey to sell more. This instruction the judge refused to give. The plaintiff now contends that if Tobey had the right to sell under the verbal contract, yet that the authority given him was revocable, the contract not being a binding one under the statute of frauds, and so was terminated by the revocation. Admitting this to be true, so far as Tobey was concerned, it might not necessarily follow that the rights of the defendants would be concluded. The ruling of the court would be too broad, because it contained no exception of the case of a revocation of Tobey's authority. On the other hand, the ruling asked by the plaintiff would be open to question; because, if an agent has been employed with full authority to dispose of property, a private revocation of that authority by his principal will not affect persons who have previously dealt with him on the faith of it, and who have no notice of the revocation.

The defendants further introduced evidence that between the years 1855 and 1860, which was the time during which the sales of wood were made by Tobey to the defendants, several other persons in the town where the farm was situated bought small quantities of wood and timber of Tobey. This evidence was objected to by the plaintiff; and he also asked that the jury should be instructed that it would not avail the defendants,

unless the jury were satisfied that both Bragg and the defend-ants had notice of such sales, and that Tobey was claiming to make the sales as owner of the property or as the authorized agent of the plaintiff, nor unless they further believed that the plaintiff, by his silence or omission to notify the defendants that Tobey had no right to sell, acted in bad faith or collusively with Tobey. This instruction was refused. There was some evi-dence that the plaintiff was several times in the town where the sales were made during those years.

The evidence offered was as we think admissible, with some of the qualifications asked. The fact of frequent sales by one person of the property of another, without objection on his part, if known to the owner of the property, would be evidence tend-ing to show that the sales were made by his permission. And without other direct proof that they were known to him, the frequency and amount of the sales themselves might furnish such evidence of general notoriety, that a jury would be author-ized to infer his knowledge of them, if his opportunity of know-ing was shown to be ample. But if the jury were not satisfied that they were known to him, they would prove nothing; and the jury should have been so directed. Their weight as evi-dence of an actual authority to Tobey to sell would not of course be affected by their being known or not known by the defendants. The question of actual authority in Tobey to make the sales to the defendants is an entirely different one from that which was coupled with it in the plaintiff's prayer for instructions, namely, an *estoppel in pais* by reason of bad faith in the plaintiff. The evidence of sales to other persons than the defendants could have had no bearing upon the latter, without proof that the defendants knew of those sales, and were induced to purchase themselves in consequence of that knowledge.

And it is upon this ground of estoppel, upon which the case may have turned, and which certainly assumed great promi-nence at the trial, that we think the instructions given to the jury require careful consideration. They proceed upon the assump-tion that the plaintiff's version of the contract was correct, and that Tobey had no actual authority to sell the wood and timber

to the defendants. Upon this assumption, the jury were told that the defendants " could not defend against the action, if there was no waiver of his rights by Bragg." This use of the word " waiver " is hardly technical, as there is nothing in the transaction to which a " waiver" could strictly apply. But the court proceeded to state what was meant with more exactness, and instructed the jury " that if the owner of property, knowing that one who is not the owner is selling the property to a purchaser who supposes he has a right to sell it, sits by and sees it sold, and sees the purchaser pay for it, without disclosing his ownership, he cannot thereafter maintain his claim for its value. And if the jury are satisfied from the whole evidence that the plaintiff, during the time when Tobey was cutting off the wood and selling it, and receiving pay for it from the corporation, knew that he was doing so, and said nothing, making no claim upon the corporation and giving them no notice, he cannot now recover." We think these instructions cannot be supported, and that they carry the doctrine of estoppel farther than is warranted by principle or authority.

The doctrine is stated in *Pickard* v. *Sears*, 6 Ad. & El. 474, " that where one by his words or conduct wilfully causes another to believe the existence of a certain state of things, and induces him to act on that belief, so as to alter his own previous position, the former is concluded from averring against the latter a different state of things as existing at the same time." And in *Freeman* v. *Cooke*, 2 Exch. 664, it is said that " in most cases to which the doctrine in *Pickard* v. *Sears* is to be applied, the representation is such as to amount to the contract or license of the party making it." And see *Audenried* v. *Betteley*, 5 Allen, 382, and cases there cited. And we do not doubt that there are cases where the mere silence of a party may amount to a representation, and may be justly held to constitute a ratification of acts done in his presence, or with his knowledge, under circumstances which call for his action if he disapproved them. In this view, the first sentence of the instructions we are considering may be a correct statement of the law. If a party " sits by," and " sees " his property sold and paid for, his silence may be

presumed to give consent. But we are aware of no case in which it has been held, nor do we know of any just reason why it should be held, that, where there is no fraudulent act or contrivance, no express fraud meditated or promoted, a party whose property has been wrongfully dealt with in his absence should lose his right to an indemnity, because he has failed to notify a party to the wrong that his rights were violated. It might be very proper and kind in him to notify a trespasser who he had reason to believe was trespassing innocently, and was likely to repeat the trespass, of the nature and consequences of his mistake; but no rule of law requires him to do so, under the penalty of losing his property. In the last sentence of the instructions, the court omit entirely the element of any participation in the transaction, or even of presence at it. The plaintiff was not shown to have any connection with the defendants whatever; or any means of communication with them, unless by letter, or by making a special effort to find them. And it seems to us to be carrying the doctrine of estoppel much too far to hold that if the owner of property is aware that other persons are about to sell and buy it under a mistaken opinion that they have a right to do so, he shall lose his property if he fails to give them notice, although he has said and done nothing to cause or encourage the mistake. It is rather their duty to inquire of him. *Gray* v. *Bartlett*, 20 Pick. 193. *Exceptions sustained.*